UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

PEACHES AND CREAM LLC,

                    Plaintiff,

- versus -

ROBERT W. BAIRD & CO.
INCORPORATED d/b/a BAIRD CAPITAL,
d/b/a BAIRD CAPITAL PARTNERS, d/b/a
BAIRD PRIVATE EQUITY, NAC
MARKETING COMPANY, INC., NAC
MARKETING COMPANY, LLC, and
JONATHAN FLICKER,

                    Defendants.

MEMORANDUM
AND ORDER
14-cv-6633 (JG)

A P P E A R A N C E S:

    STEIN LAW P.C.
        24 Woodbine Avenue, Suite 4
        Northport, New York 11768
  By:   Mitchell A. Stein
        Bradley R. Slenn
        *Attorneys for Plaintiff*

    WILLIAMS MONTGOMERY & JOHN LTD.
        233 South Wacker Drive, Suite 6100
        Chicago, Illinois 60606-6359
  By:   Darren Kinkead
        *Attorneys for Defendant Robert W. Baird & Co. Incorporated*

    MURPHY & KING, P.C.
        One Beacon Street
        Boston, Massachusetts 02108-3107
  By:   Charles R. Bennett, Jr.
        Andrew M. Jacobs
        *Attorneys for Defendants NAC Marketing Co., LLC & Jonathan Flicker*

JOHN GLEESON, United States District Judge:

Plaintiff Peaches and Cream LLC ("P&C") brings this action against defendants Robert W. Baird & Co. Incorporated d/b/a "Baird Capital," "Baird Capital Partners" and "Baird Private Equity" (collectively, "Baird"), NAC Marketing Company, Inc. and NAC Marketing Company, LLC (collectively, "NAC"), and Jonathan Flicker ("Flicker"), individually and collectively. Plaintiff alleges that the defendants breached a marketing and distribution agreement with P&C. P&C filed suit on November 11, 2014 seeking specific performance of the agreement. P&C brings its claim pursuant to 28 U.S.C. § 1338(a) asserting that its "right to relief necessarily depends on resolution of a substantial question of federal patent law." *See* Compl. ¶ 12. Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, or in the alternative, under Fed. R. Civ. P. 12(b)(6) for failure to state a claim against Baird and Flicker. For the reasons that follow, the 12(b)(1) motion is granted.

## BACKGROUND

The following facts, which at this stage I must assume to be true, are drawn from P&C's complaint and attached exhibits. *See* ECF No. 1.

Jason Gianelli is the president, sole owner and member of P&C, a limited liability company based in Suffolk County, New York. Compl. ¶ 5. On December 8, 2005, Gianelli applied for a patent for "Nutraceutical Method and Additive for Improving Human Physiology" with the United States Patent and Trademark Office. *Id*. ¶ 13. On May 7, 2007 the patent was issued, covering a method and the composition for creating a "nutraceutical-enriched coffee drink" that would include three components (milk thistle, chromium picolinate and carnitate) to be added to a coffee drink preparation. *Id*. ¶¶ 13-14. Gianelli was able to formulate an energy shot product under the patent, "Triple Threat Energy Shot." *Id*. ¶ 16.

Since approximately April 6, 2010, Baird has been a majority and controlling owner in NAC. *Id*. ¶ 17. NAC allegedly took control of New Vitality in 2010. *Id*. NAC's board of directors then hired Flicker to be New Vitality's President and CEO, and the third member of the NAC Board. *Id*.

On or about February 5, 2013, Flicker and Gianelli had a meeting at which they executed a Mutual Confidentiality and Non Disclosure Agreement ("Confidentiality Agreement") under which NAC and P&C agreed that "New Vitality would not compete in the 'energy shot' market as long as it works with P&C." *Id*. ¶ 19 & Ex. A-1 ¶ 12. Flicker signed the Confidentiality Agreement on behalf of NAC as "CEO/President." Compl. Ex. A-1.

On March 21, 2013, P&C and NAC entered into a Marketing and Distribution Agreement ("M&D Agreement"). *See* Compl. ¶ 20 & Ex. A-2. Under the terms of the M&D Agreement, NAC was to receive the exclusive right to "[m]ake, manufacture, market, advertise, sell and/or distribute the Products [including Triple Threat Energy Shot], throughout the world, through any and all distribution channels selected by [NAC]" effective February 28, 2013. *See* Compl. Ex. A-2 ¶ 1.1.1. In exchange, P&C was to receive a ten percent royalty rate of gross receipts, with a minimum annual royalty of $300,000 for the initial term and $400,000 for subsequent renewal periods in order to maintain the license and rights granted in the M&D Agreement. *Id*. ¶¶ 3.1, 3.4. Under the agreement, P&C warranted and represented that the product "as currently designed and formulated and as intended to be manufactured and commercialized herein compl[ied] with all federal, state, county, municipal and state statutes, laws or orders of any governmental or quasi-governmental entities," including the Food and Drug Administration. *Id*. ¶ 10.1.8.

3

P&C alleges that in April 2013, "New Vitality for the first time advised [P&C] that 'NAC's regulatory department' had certain issues with the current label as it existed on the 'Triple Threat Energy Shot' product." Compl. ¶ 29. By May 2013, NAC's payments of guaranteed compensation under the M&D Agreement had all been late. *See id*. ¶ 30 & Ex. C-1.

On October 30, 2013, NAC's special regulatory and litigation counsel sent P&C a letter ("termination letter") formally terminating the M&D Agreement for breach of warranties and representations. Compl. Ex. C-2-o. NAC maintained that Triple Threat Energy Shot could not be "commercialized" as intended under the M&D Agreement, specifically, as a product that "(1) detoxifies, (2) burns fat and (3) energizes[.]" *Id*. Because there was no reliable scientific evidence demonstrating the efficacy of these claimed benefits, NAC asserted that the product could not be sold lawfully. *Id*. According to the termination letter, NAC had issued a "Notice of Breach of Warranties and Representations" to P&C on July 15, 2013, detailing the manner in which P&C had breached the M&D Agreement, and setting forth steps P&C would need to take to cure the breach within ninety days. *Id*. (citing Ex. C-2-i).

P&C filed this action in November 2014, seeking specific performance of the M&D Agreement. P&C alleges a breach of the M&D Agreement in that "defendants sold absolutely nothing, advertised the Product(s) nowhere, developed no marketing plan, marketed the product to, at best, only one of their existing customers, and failed to even fully pay the first year's <u>Guaranteed</u> Compensation[.]" Compl. ¶ 38.

## DISCUSSION

A. *Motion to Dismiss Standard of Review*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."

4

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  When a defendant moves to dismiss under Rule 12(b)(1) and also moves to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must consider the Rule 12(b)(1) motion first. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (citations omitted).

In deciding a motion to dismiss where the defendant challenges the legal sufficiency of the plaintiff's jurisdictional allegations, I "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000) (citations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If a party does not "nudge[] [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

B.  *Lack of Subject Matter Jurisdiction*

"Under 28 U.S.C. § 1331, federal district courts have jurisdiction over cases arising under the Constitution, laws, or treaties of the United States." *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) (internal quotations omitted).  "A cause of action arises under federal law only when the plaintiff's 'well-pleaded complaint' raises an issue of federal law." *Id.* (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)).  "The 'well-pleaded complaint rule' is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts." *Id.* (citation omitted).

Congress has granted district courts exclusive jurisdiction over any civil action "arising under any Act of Congress relating to patents[.]"  28 U.S.C. § 1338(a).  There are two

5

ways to establish subject matter jurisdiction under 28 U.S.C. § 1338(a). A plaintiff must establish either that federal patent law creates the cause of action, or "that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pled claims."[1] *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988) (internal citations omitted). The Supreme Court has interpreted the phrase "arising under" in both § 1331 and § 1338(a) identically, applying both sections' precedents interchangeably. *Gunn v. Minton*, 133 S.Ct. 1059, 1064 (2013) (citing *Christianson*, 486 U. S. at 808-09).

    First, P&C does not assert a cause of action created under the federal patent laws. Rather, the complaint alleges that NAC did not perform under the M&D Agreement. *See* Compl. ¶ 38. The claim for relief in the form of specific performance falls squarely under contract law and does not arise under federal patent law. Actions involving contracts relating to patents are properly brought in state court even in cases where actual questions of patent law, such as the validity of the patent, are involved. *See Amer. Harley Corp. v. Irvin Indus., Inc.*, 27 N.Y.2d 168, 172 (N.Y. 1970). The fact that the M&D Agreement licensed the right to sell a patented product does not mean that the contract dispute involves a federal patent question.[2] Rather, the complaint alleges that the defendants violated the M&D Agreement by failing to produce, market or sell Triple Threat Energy Shot and by failing to make a portion of the required royalty payments. Compl. ¶¶ 38, 48. These claims do not pose any questions of federal patent law and

---

[1] Courts should apply the well-pleaded complaint rule first, and only if the federal issue is presented in the complaint is it then necessary to consider the substantiality and centrality of the federal issues. Wright, Miller & Cooper, Fed. Practice & Proc. § 3556, at 261 (2008).

[2] Even if there is an issue regarding P&C's claimed benefits for Triple Threat Energy Shot and the FDA guidelines for making such claims, this does not invoke a patent issue. A product patent does not imply it is safe to use, and products can have valid patents but be denied FDA approval. *See* Donald S. Chisum, Chisum on Patents § 4.04 (2014).

thus are not governed by patent law. *See, e.g.*, *Gunn* 133 S.Ct. at 1065 ("[W]e are comfortable concluding that state legal malpractice claims based on underlying patent matters will rarely, if ever, arise under federal patent law for purposes of § 1338(a)."); *Millepede Mktg. Ltd. v. Harsley*, 928 F. Supp. 2d 109, 116 (D.D.C. 2013) ("generally, claims regarding patent ownership are determined exclusively under state law, and are not governed by patent laws"); *Consol. World Housewares, Inc. v. Finkle*, 831 F.2d 261, 265 (Fed.Cir. 1987) (finding that the district court did not have subject matter jurisdiction under § 1338(a) over a contract dispute because the "mere presence of a patent issue cannot of itself create a cause of action arising under the patent laws").

While a federal court may still have subject matter jurisdiction where a plaintiff does not state a federal cause of action but manages to implicate a substantial issue of federal law, P&C has not done that here. *See Semiconductor Energy Lab. Co., Ltd. v. Nagata*, 706 F.3d 1365, 1370-71 (Fed. Cir. 2013) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 13 (1983)). P&C attempts to implicate an issue of federal patent law by alleging that the defendants' reason for nonperformance under the contract was based on an issue about the patent. Specifically, P&C contends that the defendants will argue that they terminated the contract because the "current formulation of the Product is not within the scope of the Patent." Compl. ¶ 39.

The presence of a potential federal defense to P&C's state law claim does not, however, establish federal jurisdiction. Here, P&C anticipates that the defendants will "claim scope" as a defense to the termination of the contract and mistakenly argues that this "triggers jurisdiction under 28 U.S.C. §1338(a)." Compl. ¶ 39, n.8. P&C's recitation of what it

characterizes as one of the defendants' "excuses" for the breach does not give rise to federal question jurisdiction under the well-pleaded complaint rule because it merely anticipates a potential federal defense — which courts have flatly rejected as creating a patent law issue under §1338(a).[3] It is well settled that "[i]t is not enough that the complaint anticipates a potential federal defense" to establish jurisdiction. *Shinnecock Indian Nation*, 686 F.3d at 138 (citations omitted) ("Because the complaint's references to federal law only anticipate and refute the Shinnecock's defenses, they do not give rise to federal question jurisdiction."); *see also Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998) ("A defense is not part of a plaintiff's properly pleaded statement of his or her claim."); *Christianson,* 486 U.S. at 809 (a case raising a federal patent law defense does not, for that reason alone, "arise under" patent law, for jurisdiction purposes, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case); *Excelstor Tech., Inc. v. Papst Licensing GMBH & Co.*, 541 F.3d 1373, 1376 (Fed. Cir. 2008) ("A claim does not arise under the patent laws if a patent issue appears only in a defense to that claim."); *City of Rome, NY v. Verizon Communic'ns, Inc.*, 362 F.3d 168, 175 (2d Cir. 2004) ("The mere existence or invocation of a federal defense does not furnish a sufficient basis for jurisdiction to attach."). Accordingly, P&C cannot invoke jurisdiction based on an anticipated federal defense.

---

[3] The Leahy–Smith America Invents Act ("AIA"), PL 112–29, 125 Stat. 284 (2011), abrogated *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826 (2002), by allowing counterclaims arising under federal patent law to provide grounds for federal removal jurisdiction. Under 28 U.S.C. § 1454, the AIA's removal statute, any civil action in which a party asserts a patent law claim may be removed to federal court. The statute does not, however, provide for removal based on anticipated defenses. *See Masimo Corp. v. Mindray DS USA, Inc.*, Civ. No. 14-405 (SDW)(MCA), 2014 WL 7495105, at *3 (D.N.J. 2014) (discussing federal removal jurisdiction based on patent law counterclaims after the AIA).

## CONCLUSION

For the reasons stated above, the motion to dismiss is granted for lack of subject matter jurisdiction.

So ordered.


John Gleeson, U.S.D.J.


Dated: March 31, 2015
       Brooklyn, New York